IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSKEAR BROUGHTON, et al., | Case No. 21-cv-01208-CRB |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| THE OHIO CASUALTY INSURANCE COMPANY, | |
| Defendant. | |

Fyrn is a California corporation that designs and manufactures furniture. In this action, Fyrn and Fyrn's chief product designer Roskear Broughton are suing the Ohio Casualty Insurance Company. They allege that Ohio Casualty improperly denied an insurance claim stemming from a petition litigated before the Trademark Trial and Appeal Board (TTAB). Plaintiffs assert claims for breach of contract, breach of the duty of good faith and fair dealing, negligence, and negligent infliction of emotional distress. Ohio Casualty now moves to dismiss the complaint for failure to state a claim.

The Court grants the motion to dismiss with prejudice because Plaintiffs' allegations show that the TTAB proceeding and surrounding circumstances did not trigger any of Ohio Casualty's duties under the insurance policy.

I.   **BACKGROUND**

   A.   **The Underlying Action**

On October 28, 2014, Broughton applied to register the FYRN trademark for use in the sale of furniture and component parts. Complaint (dkt. 1-1) ¶ 7, Ex. B. The United States Patent and Trademark Office issued the registration to Broughton on January 6,

2016.  Id. ¶ 9.  Broughton and others then incorporated Fyrn in California on October 3, 2016, and Broughton became Fyrn's employee.  Id. ¶ 10.

In the first half of 2017, FSL, a New York furniture company selling furniture under the FERN mark, contacted Fyrn.  Id. ¶ 16.  FSL asserted that the similarity between the FERN and FYRN marks created a likelihood of confusion in the marketplace and threatened to take legal action if Fyrn continued using the FYRN mark.  Id. ¶¶ 17, 18.  Fyrn refused to stop using the mark.  Id. ¶ 18.  On August 24, 2017, FSL petitioned the TTAB to cancel Broughton's registration of the FYRN mark.  Id. ¶ 19.  As Broughton's employer, Fyrn believed that Fyrn was required to pay Broughton's legal costs incurred defending the mark.  Id. ¶ 23 (citing Cal. Labor Code § 2802).  Fyrn paid the legal costs and then sought reimbursement from Ohio Casualty, Fyrn's insurer.  Id.  But Ohio Casualty denied the claim and thus declined to reimburse those costs.  Id. ¶ 25.  In December 2019, Fyrn asked Ohio Casualty to reconsider, but Ohio Casualty again denied the claim.  Id. ¶¶ 27–29.

The TTAB denied FSL's petition on March 19, 2020, after which FSL and Fyrn entered into a settlement agreement permitting both marks to coexist in the marketplace.  Id. ¶¶ 33–34.

**B.    The Insurance Policy**

Before FSL ever contacted Fyrn, Fyrn had purchased a business litigation insurance policy from Ohio Casualty effective November 8, 2016 and renewed each year thereafter.  Id. ¶¶ 11, 12.  As relevant here, the policy covers two categories of business litigation—labeled "Coverage A" and "Coverage B".  Id. Ex. D at 72 ("Insurance Policy") at 1, 6.

Coverage A states that Ohio Casualty

> will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages.

Id. at 1.

Coverage A contains a number of exclusions.  As relevant here, the "Contractual

2

Liability" exclusion excludes from coverage those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage when that obligation arises "by reason of the assumption of liability in a contract or agreement." Id. at 2. This exclusion, however, contains its own exceptions. See id. The exclusion

> does not apply to liability for damages… [a]ssumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement.

Id.

Thus, although Ohio Casualty will generally not pay sums that the insured becomes legally obligated to pay because the insured assumed that obligation via contract, Ohio Casualty will pay sums that the insured becomes legally obligated to pay because the insured assumed that obligation via an "insured contract" entered into before the relevant bodily injury or property damage occurred. See id. at 2. An "insured contract" includes any contract, clause, or agreement under which the insured "assume[s] the tort liability of another party to pay for bodily injury or property damage to a third person or organization." Id. at 15 (internal quotation marks omitted). And when there is an insured contract,

> reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of 'bodily injury' or 'property damage' provided… [s]uch attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Id. at 2.

To recap, under Coverage A, Ohio Casualty will pay sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage (and Ohio Casualty has a duty to defend the insured against any suit seeking those damages). See id. at 1. Ohio Casualty is not obligated to pay sums that the insured becomes legally obligated to pay because the insured assumed that obligation in a contract—unless the insured

3

assumed the tort liability of another party to pay for bodily injury or property damage in the contract. See id. at 2, 15. And if the insured assumed such tort liability, reasonable attorneys' fees and litigation expenses incurred in proceedings in which damages (to which the insurance applies) were alleged count as "bodily injury or property damage," such that Ohio Casualty must pay those fees and expenses. See id. at 1–2, 15 (internal quotation marks omitted).

Coverage B mirrors Coverage A but covers only damages resulting from "personal and advertising injury," rather than bodily injury or property damage. Id. at 6. Under Coverage B, Ohio Casualty

> will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit seeking those damages.'

Id. "Personal and advertising injury" means an injury arising from one of seven enumerated "offenses." Id. at 16. One of those offenses is "[t]he use of another's advertising idea in your advertisement." Id. (internal quotation marks omitted). An "advertisement" is "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." Id. at 14.

### C. Procedural History

Fyrn and Broughton sued Ohio Casualty in California Superior Court for breach of contract, breach of the covenant of good faith and fair dealing, negligence, and negligent infliction of emotional distress. Complaint at 2. All these claims arise from Ohio Casualty's failure to reimburse Fyrn for attorneys' fees relating to the TTAB proceeding. Id. ¶¶ 39, 45, 53, 58. On February 19, 2021, Ohio Casualty removed the case to this Court. See Notice of Removal (dkt. 1).[1] On February 26, Ohio Casualty moved to dismiss for

---

[1] The Court has jurisdiction over this suit because the parties are residents of different states and Plaintiffs seek more than $75,000 in damages. See Notice of Removal at 2–3; 28 U.S.C. § 1332(a)(1).

failure to state a claim for which relief may be granted.  <u>See</u> Mot. (dkt. 8).

**II.   LEGAL STANDARD**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim for which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory.  <u>Godecke v. Kinetic Concepts, Inc.</u>, 937 F.3d 1201, 1208 (9th Cir. 2019).  Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u> at 678.  When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987).

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).  Courts may take judicial notice of facts that are "not subject to reasonable dispute" because they (1) are "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Matters of public record are properly the subject of judicial notice.  <u>See</u> <u>Hyatt v. Yee</u>, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017); <u>Interstate Nat. Gas Co. v. S. Cal. Gas Co.</u>, 209 F.2d 380, 385 (9th Cir. 1953).

When dismissing a case under Rule 12(b)(6), courts generally must give leave to amend unless it is "determined that the pleading could not be cured by the allegation of

other facts" and therefore amendment would be futile. Cook, Perkiss & Leihe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).

**III.  DISCUSSION**

A standard insurance policy, like the one at issue here, imposes on a liability insurer both the duty to defend and the duty to indemnify the insured. Certain Underwriters at Lloyd's of London v. Superior Court, 24 Cal.4th 945, 958 (2001). The duty to defend (i.e., to mount and fund a litigation defense) is triggered when a suit is brought against an insured seeking damages that potentially fall within the coverage of the policy. Waller v. Truck Ins. Exch., Inc., 11 Cal.4th 1, 19 (1995). The duty to indemnify (i.e., to pay some amount of money to the insured) arises after damages are fixed in their amount and ordered by a court. Certain Underwriters, 24 Cal.4th at 958, 960. To determine whether an insurer owes a duty to defend, a court must "compar[e] the allegations of the complaint with the terms of the policy." Waller, 11 Cal.4th at 26. "Where there is no possibility of coverage, there is no duty to defend." Id. at 19 (internal quotation marks omitted). And where there is no duty to defend, there cannot be a duty to indemnify. Certain Underwriters, 24 Cal.4th at 958. In interpreting the provisions of the policy, "where it is clear, the language must be read accordingly, and where it is not, in the sense that satisfies the hypothetical insured's objectively reasonable expectations." Id. at 957 (citation omitted).

Plaintiffs argue that two different provisions of the insurance policy require Ohio Casualty to cover Broughton's attorneys' fees. First, Plaintiffs argue that the attorneys' fees Broughton incurred in the TTAB proceeding are liabilities Fyrn assumed under an "insured contract" and are therefore reimbursable to Fyrn under Coverage A. Opp'n (dkt. 15) at 1. Second, Plaintiffs argue that the TTAB proceeding is a "suit" involving allegations of "personal and advertising injury," and therefore Ohio Casualty owed Broughton a duty to defend under Coverage B. Id. Neither argument is convincing.

**A.  Coverage A (Insured Contract Coverage)**

Fyrn asserts that Ohio Casualty must reimburse it for attorney's fees that Fyrn paid

defending the TTAB proceeding because Fyrn paid these fees under an insured contract with Broughton.  Id.  Ohio Casualty argues that the relationship between Broughton and Fyrn does not meet the definition of an insured contract.  Reply (dkt. 16) at 4 n.1.  Ohio Casualty further argues that the insured contract exception covers only fees and expenses incurred in an underlying proceeding where bodily injury or property damage is alleged, and that even if it applies to proceedings involving allegations of other injuries, like personal and advertising injury, the TTAB proceeding did not involve allegations of personal and advertising injury.  Id. at 4; Mot. at 7.

As explained above, under Coverage A, Ohio Casualty must pay sums that Fyrn became "legally obligated to pay as damages because of bodily injury or property damage" to which the "insurance applies."  Insurance Policy at 1 (internal quotation marks omitted).  Attorneys' fees and expenses incurred on behalf of a third party are considered "damages because of bodily injury or property damage" only when they are assumed under an "insured contract."  Id. at 2.  An insured contract "assume[s] the tort liability of another party to pay for bodily injury or property damage to a third person or organization."  Id. at 15 (internal quotation marks omitted).  But even if Fyrn can show that such liability was assumed under an insured contract, attorneys' fees and expenses are recoverable only if the underlying proceeding involves allegations of "damages to which this insurance applies."  Id. at 2.

Plaintiffs' argument fails for at least two independent reasons.[2]

First, Ohio Casualty has no duty to indemnify Fyrn because the money Fyrn paid to Broughton was not "ordered by a court."  See Certain Underwriters, 24 Cal.4th at 960.  When an insurance policy requires the insurer to indemnify the insured for "all sums that

---

[2] The Court need not consider whether Broughton's employment contract meets the definition of an insured contract.  The Court nonetheless notes that the employment agreement does not appear to have been an insured contract.  An insured contract is a contract under which one party assumes the tort liability of another party.  See Insurance Policy at 15.  Here, Plaintiffs do not argue that Fyrn assumed liability for attorneys' fees in the employment contract—only that the existence of that contract may have implicated a statutory obligation to pay necessary expenditures, which Plaintiffs argue include attorneys' fees.  Opp'n at 7.  This constitutes a third reason to reject Plaintiffs' arguments.

the insured becomes legally obligated to pay as damages," this requirement is "limited to money ordered by a court." Id.  Because Plaintiffs allege that Fyrn paid Broughton the attorneys' fees without any court order requiring Fyrn to do so, the attorneys' fees cannot trigger Ohio Casualty's duty to indemnify under Coverage A.

Second, Plaintiffs' insured contract argument fails because the TTAB petition does not contain allegations of "damages to which this insurance applies." See Insurance Policy at 2.  The TTAB petition plainly does not allege bodily injury or property damage.  And even if "damages to which this insurance applies" is interpreted broadly to include allegations of "personal and advertising injury," the TTAB petition does not contain such allegations.  Plaintiffs argue that the petition alleged damages arising from "the use of another's advertising idea in [Fyrn's] advertisement"—which the policy includes in the definition of "personal and advertising injury." Opp'n at 16 (quoting Insurance Policy at 16).  But this is not a plausible reading of the petition.  The TTAB petition alleges that the petitioner "will be damaged by the continued registration of the mark." Request for Judicial Notice (dkt. 8-1) at 7.[3]  The petition explains that FSL filed their own trademark application with the Trademark Office for the FERN mark, but this application was refused because of its similarity to Plaintiffs' FYRN mark. Id. at 8.  Thus, the petition alleges that the act of registering FYRN with the Trademark Office injured the petitioner by causing the Trademark Office to deny the petitioner's own trademark application.  Nowhere does the petition allege that the petitioner has been damaged by Plaintiffs' use of the FYRN mark in advertising.[4]

Plaintiffs cite Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group 50

---

[3] Ohio Casualty requests that the Court take judicial notice of Exhibit 1, the Petition for Cancellation filed in the proceeding before the TTAB entitled Fern Handcrafted Furniture, LLC v. Roskear P. Broughton, Cancellation No. 92066750. See Request for Judicial Notice.  Because Plaintiffs have not opposed Ohio Casualty's request and the requirements for judicial notice are otherwise met, the Court takes judicial notice of the petition.

[4] Nor is there any potential that the TTAB proceeding could consider allegations of injury resulting from the use of the mark in advertising.  A TTAB proceeding is a limited proceeding in which "the Board is empowered to determine only the right to register." See V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC, 946 F.3d 542, 546 (9th Cir. 2019) (citing TTAB Manual of Procedure § 102.01 (2019)).

Cal. App. 4th 548 (1996), for the proposition that "trademark infringement [is] potentially covered as an advertising idea." Opp'n at 15 (emphasis in original). But in Lebas, the underlying suit alleged that the insured had used an infringing mark on its clothing products and in advertisements for those products. Lebas, 50 Cal. App. 4th at 554. Here, the TTAB petition does not allege that Fyrn affixed its mark to goods or used it in advertising. It alleges only that the petitioner was damaged by Plaintiffs' registration of the FYRN mark. See Request for Judicial Notice at 7–8.

For these reasons, the Court concludes that Ohio Casualty has no duty to reimburse Fyrn's fees and expenses under Coverage A.[5]

**B.     Coverage B**

Plaintiffs contend that Ohio Casualty had a duty to defend Broughton in the TTAB proceeding under Coverage B because the TTAB proceeding was a 'suit' that alleged damages arising from personal and advertising injury and Broughton was an "insured." See Opp'n at 5–6.

Like Coverage A, Coverage B imposes on Ohio Casualty a duty to defend and a duty to indemnify the insured.

With regard to the duty to indemnify, Plaintiffs were not legally obligated to pay any damages as a result of the TTAB proceeding, so Ohio Casualty is not liable to pay any damages resulting from the proceeding. See Complaint, Ex. I at 1–2.

With regard to the duty to defend, Plaintiffs focus on the policy's definition of "suit," which means a "civil proceeding in which damages because of bodily injury, property damage, or personal and advertising injury to which this insurance applies are alleged." Insurance Policy at 17 (internal quotation marks omitted). Plaintiffs maintain that this provision requires only that damages be alleged in the underlying "suit," and that the TTAB petition satisfies this definition because FSL stated that they were damaged by

---

[5] The Court also notes that Ohio Casualty had no duty to defend under Coverage A because there was no suit seeking damages. See infra part III.B (elaborating on this point with respect to Coverage B).

the FYRN trademark.  Opp'n at 6.  Plaintiffs also argue that any ambiguity regarding whether Coverage B requires that damages must be sought or merely "alleged" should be resolved in Plaintiffs' favor.  Id. at 5–7, 19–22.

Plaintiffs' argument fails because it is contradicted by the plain language of the insurance policy.  Coverage B's language is "clear and explicit."  See Cal Civ. Code § 1638.  And Coverage B requires a "'suit' <u>seeking those damages</u>."  Insurance Policy at 6 (emphasis added).  The TTAB proceeding did not seek damages, and the Ninth Circuit has consistently held that the TTAB has no power to award damages.  See <u>Rhoades v. Avon Prods., Inc.</u>, 504 F.3d 1151, 1158 (9th Cir. 2007); <u>V.V.V. & Sons Edible Oils Ltd.</u>, 946 F.3d at 546; Request for Judicial Notice at 7.  Because the TTAB proceeding was not a suit "seeking . . . damages," it did not trigger Ohio Casualty's duty to defend.[6]  Plaintiffs' argument also fails because, as discussed previously, the TTAB petition does not contain allegations of personal and advertising injury.[7]

Accordingly, the Court concludes that Ohio Casualty has no duty to defend or indemnify Plaintiffs under Coverage B.

\*

All of Plaintiffs' causes of action are premised on Ohio Casualty's breach of the insurance policy.  Because there was no breach, the Court dismisses all claims.

Plaintiffs' right to relief is precluded by the insurance policy's language and the TTAB petition.  There is no possibility that the defects in Plaintiffs' Complaint can be cured by additional allegations.  Thus, the Court dismisses Plaintiffs' claims without leave to amend.  See <u>Cook, Perkiss & Leihe, Inc.</u>, 911 F.2d at 247.

---

[6] The parties also dispute whether the TTAB proceeding was a "suit."  Reply at 5; Opp'n at 13.  But regardless whether the proceeding was a "suit," FSL did not seek damages.  Plaintiffs also argue that the duty to defend is ambiguous because it is not qualified by the word "only."  Opp'n at 19.  This argument misunderstands the policy.  The "Insuring Agreement" portion of Coverage B is an exclusive list of the duties that the insurer assumes under the policy.  See Insurance Policy at 6.

[7] Plaintiffs also argue that a TTAB ruling can have preclusive effect, and therefore a petitioner may litigate before the TTAB with the eventual goal of seeking damages in a court of law.  Opp'n at 13.  But the policy does not cover any suit brought by a party who might intend to seek damages later.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the motion to dismiss with prejudice.

**IT IS SO ORDERED.**

Dated: April 8, 2021



CHARLES R. BREYER
United States District Judge